## Boden v. Pulaski Township Zoning Commission

*Donald E. Williams*, for plaintiffs.

*Howard W. Lyon*, for defendant.

HENDERSON, J., March 8, 1962.—In this case, husband and wife, plaintiffs, are owners of a certain lot of land situate, lying and being in Pulaski Township, Lawrence County, upon which said property they have placed a trailer or mobile home. The ground floor area of the said mobile home in question is 450 square feet.

The Township of Pulaski, Lawrence County, had previously passed a certain zoning ordinance, under which ordinance the township was divided into seven different type districts. Article XI, titled "Residential Floor Area Requirements," set forth the minimum ground floor area for residences of less than two stories in each of the districts where residences were permitted under the ordinance.

The district in which plaintiffs' land lies is known as an "R-2" residence district and the minimum ground floor area for residences of less than two stories in this type district is set at 800 square feet. In one type district, no residences are permitted. In three other type districts, the minimum ground floor area for residences of less than two stories is also set at 800 square feet. However, in two types of district, the minimum ground floor area for residences of less than two stories is set at 1,000 square feet.

Under article XIV of the said ordinance, trailers or mobile homes are permitted for occupancy as living quarters in trailer camps or parks, subject to certain rules and regulations, set forth in the ordinance.

Section 1, subsec. 2, of article XIV states as follows:

"House trailer, trailer coach or a mobile home means any vehicle for living or sleeping purposes. If a house trailer, trailer coach or mobile home (not in a trailer

camp) is used for living or sleeping purposes within the Township for an aggregate of more than thirty days in any period of one year, it shall be considered as a single dwelling for all purposes of this ordinance."

The ordinance then places certain requirements and regulations on trailer parks dealing with minimum size of the park, minimum size of ground area per trailer, sewage disposal systems, recreation areas, proximity to abutting properties, landscaping and maintenance.

Plaintiffs have used their mobile home for living and sleeping purposes within the Township of Pulaski for a period of more than 30 days.

Plaintiffs made application for a zoning permit for the use of their property and their mobile home or trailer as a single-family dwelling and as a residence, which application was refused by the township zoning inspector for nonconformity with the minimum requirements of the ordinance.

Plaintiffs agree that their house trailer is a single-family dwelling for all purposes of this ordinance. See also Lower Merion Township v. Gallup, 158 Pa. Superior Ct. 572 (1946).

Plaintiffs appealed to the Pulaski Township Zoning Commission, Board of Adjustment, from the refusal of the township zoning inspector to grant the zoning permit. A time for hearing was set, at which time facts stipulated by counsel for the respective parties were set forth in the secretary's minutes of the hearing, it being agreed by counsel for the respective parties that the stipulated facts would make up all of the evidence to be presented before the Board of Adjustment.

The township Board of Adjustment affirmed the action of the township zoning inspector, following which plaintiffs have brought this matter before the court.

Plaintiffs contend that the action of the Pulaski Township Zoning Inspector and the Pulaski Township

Zoning Commission Board of Adjustment has resulted in an improper, unreasonable and arbitrary exercise of the police power and that the Pulaski Township Zoning Ordinance is unconstitutional in its application to plaintiffs in that it violates the liberties, rights and privileges guaranteed plaintiffs by article 2, sec. 1, of the Constitution of Pennsylvania, and the fourteenth amendment of the Constitution of the United States, in denying them the use and benefit of their property without compensation.

This zoning ordinance in question has been adopted by the said township under the authority of the Act of May 1, 1933, P. L. 103, its supplements and amendments, 53 PS §67001, et seq., which states:

"For the purpose of promoting health, safety, morals or the general welfare of townships of the second class, the supervisors are hereby empowered to regulate and restrict the height, number of stories and size of buildings and other structures. . . ."

Plaintiffs take the position that this grant of power to the township supervisors is a transfer of the discretion to invoke or not to invoke the police powers of the State to local authorities in this area and that, since the granting clause specifies the purpose for which the powers may be used, they must be used only for this purpose and that their exercise for other purposes would not be valid. Plaintiffs cite numerous cases to the effect that " 'There is no doubt that a zoning regulation is valid if it is clearly necessary for the preservation of public health or safety or morals . . .' ": Landau Advertising Co., Inc. v. Zoning Board of Adjustment, 387 Pa. 552 (1957).

". . . It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discrimi-

natory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property . . .": Lord Appeal, 368 Pa. 121, 125 (1951).

". . . The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare": Nectow v. City of Cambridge, 277 U. S. 183.

Plaintiffs contend that the requirements of this particular ordinance do not meet the test set forth in the cited cases and set forth in the statute, in that there is no showing that the minimum floor area requirements promote health, safety, morals or the general welfare and that, therefore, this is an improper, unreasonable, arbitrary exercise of the police power.

Plaintiffs rely upon the case of Medinger Appeal, 377 Pa. 217 (1954), in which the zoning ordinance in question had incorporated in it a sliding scale of minimum floor space requirements, as does the Pulaski Township ordinance.

Justice Bell, speaking for the court in that case, decided the narrow question of whether or not a sliding scale of minimum habitable floor area which varied in different districts of the township was constitutional. The decision of the court was that this was unconstitutional and stated that zoning acts are only constitutional ". . . whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory or arbitrary, or unreasonable or confiscatory in their application to a particular or specific piece of property: White's Appeal, 287 Pa. 259, 134 A. 409; Taylor v. Moore, 303 Pa. 469, 154 A. 799; . . . Taylor v. Haverford Township, 299 Pa. 402, 149 A. 639; . . . Village of Euclid

v. Ambler Realty Company, 272 U. S. 365, 47 S. Ct. 158; . . .'"

"'Restrictions imposed by zoning ordinances are, however, in derogation of the common law and (at times) of the liberties, rights and privileges guaranteed by the Constitution of the United States and the Constitution of Pennsylvania and therefore must be strictly construed: Lukens v. Zoning Board of Adjustment, 367 Pa. 608, 80 A. 2d 765; Kline v. Harrisburg, 362 Pa. 438, 451, 68 A. 2d 182.'"

The court further held that a regulation by the government in this field must be a reasonable regulation clearly necessary to preserve the health, safety or morals of the people: White's Appeal, supra. The exercise of this regulation must have a substantial relation to the public good and must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic considerations: Welch v. Swasey, 214 U. S. 91; Coppage v. Kansas, 236 U. S. 1; St. Louis Poster Advertising Company v. St. Louis, 249 U. S. 269; Cooley on Constitutional Limitations, 768.

It is a natural right to own property and to deal with it as the owner chooses, so long as this use harms nobody.

Justice Bell recognized that overcrowding in the home may have a direct effect on health and morals but, with regard to the question of the sliding scale, the court held that minimum areas sufficient for homes in one district are sufficient minimum areas for homes in other districts and, therefore, that the sliding scale requirement was an unreasonable, arbitrary exercise of the police power.

Further, Justice Bell recognized that the desire to protect, improve and develop the community, to plan for beauty and to conserve property values as well as the "tone" of the community is commendable, but can't

impinge upon or abolish property rights. The court there held that a municipality cannot deprive the owner, by zoning, of his right to use his property as he wishes merely because the zoning board believes it is not artistic or aesthetic: Liggett's Petition, 291 Pa. 109; White's Appeal, supra; Miller v. Seaman, 137 Pa. Superior Ct. 24; Lord's Appeal, supra.

Many cases following the case of Medinger Appeal have cited that appeal and have used the test set forth in that case, together with the rationale of the case, extensively.

Although the Medinger case has never been specifically overruled it would appear that the reasoning of, and the basis for, the decision in that case has been overruled by the Supreme Court of Pennsylvania and Justice Bell, now Chief Justice Bell, has so stated in his dissenting opinion in Bilbar Construction Company v. Easttown Township Board of Adjustment, 393 Pa. 62 (1958).

Even though the Bilbar case dealt with minimum lot area requirements rather than minimum ground floor area requirements of residences, the opinion specifically permits consideration of factors upon which the decision rests, which the Medinger case did not permit.

". . . Since, with the passing of time, urban and suburban planning has become an accredited adjunct of municipal government, aesthetic considerations have progressively become more and more persuasive as sustaining reasons for the exercise of the police power."

The court quoted with approval from Day-Brite Lighting, Inc., v. Missouri, 342 U. S. 421, to the effect that the values represented by the police power of the State " '. . . are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be

beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled . . .' "

"We ourselves have a number of times upheld the constitutionality of zoning ordinances which bore no reasonable relation to the health, safety, or morals of the community but whose constitutional validity rested alone upon the promotion of the general welfare . . ."

Also, in Best v. Zoning Board of Adjustment, 393 Pa. 106 (1958), it was held that, if we accept the contention that the scheme of zoning should be ignored " '. . . so long as it could be shown that the proposed use would not adversely affect to any reasonable extent the public health, safety or morals. The statutory law of zoning would be replaced by the law of nuisance . . .' . . .

"Hence, as we held in the Swade case, and now reaffirm, considerations of the general welfare alone support the constitutionality of zoning ordinances."

The court then uses the case of Berman v. Parker, 348 U. S. 26 (1954), to illustrate the general welfare concept as it finds it to be in this type case by quoting the same language as the Day-Brite case set forth above.

In view of the fact that the Best case and other cases have now held that considerations of the general welfare alone are sufficient to support the constitutionality of the zoning ordinance, and that it is not necessary that it also be substantially related to preserving or promoting the public health or safety or morals, it would then appear that the action of the Pulaski Township Zoning Commission, Board of Adjustment, in this case was not capricious, arbitrary or unreasonable and that its findings are constitutional and proper.

Plaintiffs allege that a sliding scale of minimum floor areas is unconstitutional under the narrow holding of the Medinger case. However, the court finds that

plaintiffs have no standing to object to the constitutionality of this ordinance on that grounds, by reason of the fact that the minimum square footage of floor area in their single-family dwelling is substantially less than the minimum requirement of the ordinance in any district. Plaintiffs are not prejudiced or affected by the sliding scale of minimums.

Plaintiffs allege that the ordinance permits minimum floor areas of less than 800 square feet by its own terms in trailer courts and that this, in effect, sets up a third minimum area under the sliding scale of the ordinance. The fact that trailers are permitted in trailer parks under the ordinance cannot be used to provide an argument on that basis by reason of the fact that special detailed requirements and regulations are included in the ordinance with regard to trailer parks or trailer camps. The ordinance itself specifically permits ground floor area minimums for trailer residences of less than 800 square feet, but only in those areas, trailer parks, where such residences will be congregated subject to close supervision and inspection concerning such things as sewage disposal systems, recreation areas, proximity to abutting properties, landscaping and maintenance. It is held that this also is a valid exercise of the police power of the government and that this is not an unreasonable or arbitrary exercise of that power.

The fact that it is impossible for house trailers, because of their size, to conform to the zoning ordinance except in trailer camps, does not invalidate the legislation: Commonwealth v. McLaughlan, 168 Pa. Superior Ct. 442 (1951) ; Lower Merion Township v. Gallup, 158 Pa. Superior Ct. 572. Although the McLaughlan and Gallup cases deal with building ordinances rather than with zoning ordinances, ". . . This control by the building laws and the municipal regulations founded thereon, is basically the same as that imposed by the

zoning ordinances . . .": Commonwealth ex rel. Shooster v. Devlin, 305 Pa. 440 (1932).

Plaintiffs draw a distinction between the ordinance in this case and the ordinance in the Medinger case in that in the Medinger case the ordinance required a certain minimum amount of "habitable" floor area and that there is no requirement in this ordinance that the floor area be "habitable." The court does not find that this is controlling in any sense, and nowhere do we find any requirement that designated minimum floor areas be further designated as "habitable." No such requirement follows from the theory of the Best and the Bilbar cases.

The Act of May 1, 1933, P. L. 103, as amended, 53 PS §67003, states that:

"All regulations made pursuant to the powers granted in this article shall be made in accordance with a comprehensive plan and designed to . . . prevent the overcrowding of land; to avoid undue congestion of population; to facilitate the adequate provision of . . . sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

It would appear to this court that these purposes, as expressly stated in the statute, conform to the holdings in the Bilbar and Best cases to the effect that aesthetic considerations such as beauty, spaciousness and a well-balanced community are proper considerations in determining the validity of zoning ordinances.

This court is inclined to agree with Justice Bell, now Chief Justice Bell, in his dissenting opinion in the Bilbar and Best cases, that this is unlimited police power and is too broad an interpretation of the general wel-

fare clause. However, we find that the reasoning of, the rationale of, and the basis for the decisions in the Bilbar and Best cases apply in the case at bar and control the case at bar. Therefore, the action of the Pulaski Township Zoning Commission, Board of Adjustment, will be affirmed.

### Order

Now, March 8, 1962, the action of the Pulaski Township Zoning Commission, Board of Adjustment, refusing a zoning permit to plaintiffs herein, is affirmed.