**BOROUGH OF NEW BLOOMFIELD**

v.

**Mr. and Mrs. S. Durbin WAGNER, Robert A. Hench, Robert I. Hench and Carol D. Hench, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 2011.

Decided Jan. 18, 2012.

Joshua D. Bonn, Harrisburg, for appellants.

Paul R. Wagner, Harrisburg, for appellee.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge COHN JUBELIRER.

Mr. and Mrs. S. Durbin Wagner, Robert A. Hench (R.A. Hench), Robert I. Hench (R.I. Hench) and Carol D. Hench (collectively, "Property Owners") appeal from the December 27, 2010 Order of the Court of

Common Pleas of the 41st Judicial District (Perry County Branch) (trial court) granting the Borough of New Bloomfield's (Borough) Motion for Summary Judgment and declaring Ordinance No. 256 of the Borough Council of Borough of New Bloomfield (Borough Council) constitutionally valid as it relates to Property Owners.[1] Property Owners raise the following issues in this appeal: (1) whether the trial court erred in failing to find Ordinance No. 256 ultra vires; (2) whether the trial court erred in finding Ordinance No. 256 consti-

tutional as applied to Property Owners; and (3) whether the trial court erred in finding that the record evidence established the existence of a nuisance in fact. We reverse and remand.

Ordinance No. 256, passed on September 5, 2006 by the Borough Council, prohibits nuisances on private or public property within the Borough, including, *inter alia*, the accumulation of abandoned vehicles, and provides for the removal thereof by the Borough.[2] Ordinance No. 256 be-

---

1. We note that the Borough is referred to by the parties in this matter and in documents in the certified record, including some ordinances, as both "Borough of New Bloomfield" and "Bloomfield Borough."

2. Ordinance No. 256 provides, in pertinent part, as follows:

WHEREAS, the Council of Bloomfield deems it to be in the best interests and general welfare of the citizens and the residents of the Borough to prohibit the unreasonable, unwarrantable or unlawful use of private or public property which causes injury, damage, hurt, inconvenience, annoyance, or discomfort, to others in the legitimate enjoyment of their rights of person or property; and

NOW, THEREFORE, BE IT ENACTED AND ORDAINED, and it is enacted and ordained, by the Borough Council of Bloomfield, Perry County, as follows:

SECTION I: DEFINITIONS

For the purposes of this Ordinance, the following terms, phrases, words and their derivations shall have the meaning given herein....

A. **Abandoned Vehicles**—A vehicle (other than a pedal cycle):

1. That is inoperable and is left unattended on public property for more than 48 hours;

2. That has remained illegally on public property or public highway right-of-way, for a period of more than 48 hours;

3. That is without a valid registration plate or certificate of inspection or title left unattended on or along a public right-of-way; or that has remained on private property with or without the consent of the owner or person in control of the property for more than 48 hours.

4. Conditions under which vehicles are not considered abandoned.

a. Vehicles and equipment used, or to be used, in construction, and/or in the operation or maintenance of public facilities, and/or private property which are left in a manner which does not interfere with the normal movement of traffic and does not create a nuisance as defined in this Ordinance;

b. Vehicles and equipment stored in a garage on the property or no more than two (2) vehicles per taxable parcel provided the vehicles have a custom designed and manufactured cover on the vehicles;

c. A licensed auto-repair garage actively-repairing a vehicle for a period of time not to exceed six (6) months.

....

G. **Nuisance**—The unreasonable, unwarrantable or unlawful use of public or private property which has the potential to cause or causes injury, damage and hurt and/or abuses[,] inconvenience, annoyance or discomfort to any person in the legitimate enjoyment of his reasonable rights of person or property.

....

SECTION II: NUISANCES DECLARED ILLEGAL

Nuisances, including but not limited to the following, are hereby declared to be illegal, when not in accordance with this Ordinance and upon confirmation by the Council:

....

B. It shall be unlawful to store, or deposit any abandoned or junked vehicle or part thereof, in or on any highway or public or private property, vacant or occupied, within Bloomfield Borough.

came effective five days after its adoption and provides that anyone storing abandoned vehicles on their property shall, within eighteen months of the adoption of the Ordinance, remove all such vehicles so as to comply with the Ordinance. (Ordinance No. 256 Section VI, R.R. at 15a.) Property Owners all own and store a variety of unregistered or uninspected vehicles on their respective properties, which are within the Borough's limits. (Trial Ct. Op. at 1.) Property Owners' vehicles would be deemed abandoned under Ordinance No. 256. (Trial Ct. Op. at 1.)

The Borough filed a Declaratory Judgment Action with the trial court on August 17, 2009, requesting that the court: (1) "declare that the definition of abandoned vehicles" set forth in Ordinance No. 256 applies to Property Owners; and (2) direct Property Owners to remove the abandoned vehicles from their properties. (Declaratory Judgment Action ¶ 11, R.R. at 8a.) On September 4, 2009, Property Owners filed an Answer and New Matter seeking a declaration that Ordinance No. 256 was ultra vires and unconstitutional as applied to them. (Answer and New Matter, R.R. at 17a–26a.) The Borough filed an Answer to Property Owners' New Matter. (Answer to New Matter, R.R. at 27a–31a.) On July 20, 2010, the parties filed a Stipulation of Facts (Stipulation), which set forth the properties and vehicles at issue, the condition of the properties and vehicles, and the vehicles that were classified as abandoned under Ordinance No. 256. (Stipulation, R.R. at 32a–42a.)

On July 30, 2010, the Borough and Property Owners filed cross Motions for Summary Judgment. (Motion for Summary Judgment by Property Owners, R.R. at 44a–46a; Motion for Summary Judgment by the Borough, R.R. at 47a–49a.) The trial court heard argument on the cross motions on September 22, 2010 and, by Order dated December 27, 2010, granted the Borough's Motion for Summary Judgment and declared that Ordinance No. 256 was constitutionally valid as it related to Property Owners. The trial court did not specifically rule on Property Owners' Motion for Summary Judgment. In an opinion in support of its Order, the trial court found that: (1) Ordinance No. 256 does not declare the storage of vehicles a nuisance per se; therefore, the Ordinance is not ultra vires as it pertains to Property Owners; (2) there is evidence establishing the existence of a nuisance in fact because the properties at issue are bordered by residential homes and a business, and a variety of several unregistered and uninspected vehicles sit out in plain view on the properties; and (3) Ordinance No. 256 is constitutional as applied to Property Owners. (Trial Ct. Op. at 2–8.) This appeal followed.[3]

Property Owners first argue that this Court should hold that Ordinance No. 256 is ultra vires on its face because the express language of the Ordinance declares that the storage of unregistered and uninspected vehicles on private property for more than forty-eight hours is a nuisance per se. Property Owners argue further that the trial court erred in finding Ordinance No. 256 constitutional as applied to Property Owners where no evidence of record established the existence of a nuisance in fact. Property Owners assert

(Ordinance No. 256 Sections I.A, I.G, II.B, R.R. at 10a–12a.)

3. Our "scope of review in a declaratory judgment action is limited to determining whether the trial court's findings are supported by substantial evidence, and whether the trial court committed an error of law or abuse of discretion." *Juniata Valley School District v. Wargo*, 797 A.2d 428, 429 n. 3 (Pa.Cmwlth. 2002).

that Ordinance No. 256, as written, impermissibly extends the Borough's statutory power to protect the health, safety, and welfare of the community. Property Owners contend that an unregistered or uninspected vehicle has no more impact on the public welfare than a registered or inspected vehicle in the absence of facts that such vehicle creates a nuisance. Property Owners argue that this Court's holdings in *Teal v. Township of Haverford,* 134 Pa. Cmwlth. 157, 578 A.2d 80 (1990) and *Kadash v. City of Williamsport,* 19 Pa. Cmwlth. 643, 340 A.2d 617 (1975), require this Court to hold that Ordinance No. 256 is unconstitutionally unreasonable as applied to Property Owners.

The Borough responds that it lawfully enacted Ordinance No. 256 pursuant to Section 1202(5) of The Borough Code,[4] 53 P.S. § 46202(5), and that Ordinance No. 256 is constitutionally valid. The Borough asserts that the instant matter is similar to this Court's decision in *Groff v. Commonwealth,* 100 Pa.Cmwlth. 135, 514 A.2d 300 (1986), wherein the ordinance prohibited the "open storage of an unlicensed and unregistered motor vehicle on [private] property." The Borough states that this Court, in *Groff,* determined that the ordinance in question clearly stated that its direct purpose was "to safeguard and promote the health, safety and welfare of the public." *Id.* at 301. The Borough maintains that Ordinance No. 256 regulates the maintenance of certain vehicles and otherwise permits abandoned and junked vehicles to be maintained on private property

under certain conditions. The Borough argues that Ordinance No. 256 is an appropriate regulation by the Borough to ensure that junked and/or abandoned vehicles are maintained and regulated in such a fashion as to promote the general welfare of the community.

■ As a political subdivision, the "Borough has only those powers specifically delegated to it by the" General Assembly. *Commonwealth v. Creighton,* 163 Pa. Cmwlth. 68, 639 A.2d 1296, 1298 (1994). Section 1202(5) of The Borough Code authorizes a borough to enact an ordinance "[t]o prohibit and remove any nuisance, including but not limited to ... the storage of abandoned or junked automobiles ... on public or private grounds, or to require the removal of any such nuisance ... by the owner or occupier of such grounds." 53 P.S. § 46202(5). A borough's ordinance seeking to abate the storage of abandoned vehicles "*cannot declare the mere presence* of such vehicles *on any given piece of property to be a nuisance per se.*" *Creighton,* 639 A.2d at 1299 (quoting *Talley v. Borough of Trainer,* 38 Pa.Cmwlth. 441, 394 A.2d 645, 646 (1978) (emphasis in original)); *see also Commonwealth v. Hanzlik,* 400 Pa. 134, 137, 161 A.2d 340, 342 (1960) (holding that former Section 702 of The Second Class Township Code,[5] now Section 1529, authorizes a second class township to prohibit nuisances, such as junked or abandoned automobiles, by ordinance so long as the township proves that the vehicle is a nuisance in fact.).[6] We further held in

---

**4.** Act of February 1, 1966, P.L. (1965) 1656, *as amended.*

**5.** Act of May 1, 1933, P.L. 103, *formerly,* 53 P.S. § 65712, deleted by Section 1 of the Act of November 9, 1995, P.L. 350. A similar provision is now found at Section 1529 of The Second Class Township Code, added by Section 1 of the Act of November 9, 1995, P.L. 350, *as amended,* 53 P.S. § 66529.

**6.** Although *Hanzlik* involved a determination of the extent of a township's powers under The Second Class Township Code, this Court has applied its reasoning in cases involving borough and city ordinances. *Commonwealth v. Snyder,* 688 A.2d 230, 231 (Pa. Cmwlth.1996); *Davis v. Commonwealth,* 127 Pa.Cmwlth. 475, 561 A.2d 1339, 1340 (1989).

*Creighton* that "*the ordinance must be phrased in such a way as to require the municipality to affirmatively establish that a nuisance in fact existed.*" *Creighton*, 639 A.2d at 1299 (quoting *Talley*, 394 A.2d at 646) (emphasis in original).

The trial court in this matter found that the Borough did not exceed its authority in enacting Ordinance No. 256. The trial court reasoned that, because Ordinance No. 256 lists certain exceptions or circumstances where a vehicle is not considered abandoned, the Ordinance does not declare the storage of unregistered or uninspected vehicles to be a nuisance per se. We disagree.

The Borough has the authority, pursuant to Section 1202(5) of The Borough Code, to enact an ordinance prohibiting public nuisances and providing for the removal thereof. Ordinance No. 256 declares that the Borough Council deemed:

> [I]t to be in the best interests and general welfare of the citizens and the residents of the Borough to prohibit the unreasonable, unwarrantable or unlawful use of private or public property which causes injury, damage, hurt, inconvenience, annoyance, or discomfort, to others in the legitimate enjoyment of their rights of person or property[.]

(Ordinance No. 256 Preamble, R.R. at 10a.) Ordinance No. 256 defines "nuisance" as "[t]he unreasonable, unwarrantable or unlawful use of public or private property which has the potential to cause or causes injury, damage and hurt and/or abuses[,] inconvenience, annoyance or discomfort to any person in the legitimate enjoyment of his reasonable rights of persons or property." (Ordinance No. 256 Section I.G, R.R. at 12a.) Certain nuisances are declared illegal; specifically, "[i]t shall

be unlawful to store, or deposit any abandoned ... vehicle ... in or on any highway or public or private property, vacant or occupied, within Bloomfield Borough." (Ordinance No. 256 Section II.B, R.R. at 12a.) Ordinance No. 256 defines an "abandoned vehicle" as, *inter alia*, a vehicle "[t]hat is without a valid registration plate or certificate of inspection or title ... that has remained on private property with or without the consent of the owner or person in control of the property for more than 48 hours." (Ordinance No. 256 Section I.A, R.R. at 11 a.)

■ Based on the foregoing, we agree with Property Owners that Ordinance No. 256 does declare vehicles stored on a private property owner's property for more than forty-eight hours that fall within the definition of "abandoned vehicle" a nuisance per se. Pursuant to Ordinance No. 256, a vehicle is *automatically* deemed "abandoned" if the vehicle is unregistered, uninspected, or has no title and has remained on an owner's private property, with or without the owner's consent, for more than forty-eight hours. (Ordinance No. 256 Section I.A, R.R. at 10a–11a.) While the definition of nuisance includes a standard of harm, Ordinance No. 256 does not specifically state that such harm must be shown before a vehicle falling within the definition of "abandoned vehicle" will be deemed a nuisance in accordance with Ordinance No. 256. In other words, Ordinance No. 256 is not "phrased in such a way as to require the [Borough] to affirmatively establish that a nuisance in fact" exists. *Creighton*, 639 A.2d at 1299. Instead, the definition of nuisance bears no relation to the definition of abandoned vehicle or to the type of activities or conditions that Ordinance No. 256 declares as illegal nuisances.[7] As such, Property

---

7. We note that Ordinance No. 256 also deems as a nuisance, *inter alia*, the "[p]ermitting or

allowing any well or cistern to be or remain uncovered" and the "[m]aintaining or causing

Owners are correct in their assertion that Ordinance No. 256 declares the mere presence of unregistered or uninspected vehicles on private property for more than forty-eight hours to be a nuisance per se. We are aware that, as stated in *Kadash*, "[w]here a reasonable interpretation can be adopted, which will save the constitutionality of an ordinance, [it is the court's] duty to adopt it." *Kadash*, 340 A.2d at 621. However, Ordinance No. 256 states that "abandoned" vehicles, as defined by the Ordinance, are unlawful, and neither the definition of "abandoned" nor the Ordinance requires evidence that a vehicle actually be a nuisance in fact. There is no reason for that provision if an "abandoned vehicle" under the Ordinance (e.g., new, but unregistered vehicle, or the inadvertent lapse in a registered vehicle's annual inspection) might not be unlawful. Thus, under Ordinance No. 256, the mere presence of "abandoned" vehicles on private property is a nuisance per se. Moreover, the fact that Ordinance No. 256 provides for certain exceptions where a vehicle is not considered abandoned (i.e., where the vehicle is covered, in a building, or at a car repair shop), does not affect the analysis. In light of the foregoing analysis, we must conclude that Ordinance No. 256 is unconstitutional as applied to Property Owners,[8] and the trial court erred in holding otherwise. *See Teal*, 578 A.2d at 82 (stating "[i]f this Court were to interpret the Ordinance as declaring the storage of disabled vehicles to be unlawful as a nuisance per se, it would not only be beyond the scope of [the statutory] power granted to [the borough] ... but also unconstitutionally unreasonable.")

■ Finally, Property Owners argue that the trial court erred in finding that there was evidence in the record to establish the existence of a nuisance in fact.[9] They assert that there must be sufficient evidence of a nuisance in fact before permitting a borough to enforce an ordinance abating the storage of vehicles on private property. *See Davis*, 561 A.2d at 1340–41 ("[A] nuisance in fact must be proven in order to sustain a conviction for [a] violation of ... ordinances" declaring "the storage of junked or abandoned automobiles as nuisances."). Evidence that vehicles lack current registration plates and inspection stickers is not sufficient to prove a nuisance in fact where there is no evidence that the vehicles posed any public danger, inconvenience, or distraction. *Teal*, 578 A.2d at 83. The burden to prove a nuisance in fact is strict and requires clear evidence of a nuisance, such as debris strewn around a property or material "abut[ting] and partial[ly] imping[ing] upon a public sidewalk frequently used by

---

to be maintained any dangerous structure, including but not limited to abandoned or unoccupied buildings or [p]arts of buildings in a state of dilapidation or disrepair." (Ordinance No. 256 Sections II.F and II.H, R.R. at 13a.) These declared nuisances make the prohibited activity in and of itself harmful to the general health, safety, and welfare of the public. However, this is not so with respect to abandoned vehicles. For example, a vehicle that is brand new, but not yet registered, inspected, or titled, or a registered vehicle, whose owner inadvertently fails to have the vehicle inspected within forty-eight hours of expiration that is stored on private property for more than forty-eight hours, would be deemed an "abandoned vehicle" under Ordinance No. 256 and, therefore, unlawful.

8. "Ordinances enjoy the presumption of validity and the challenger to constitutionality has the burden of proving that the ordinance was not related to the public health, safety, or welfare." *Groff*, 514 A.2d at 301.

9. We note that the Borough does not advance any argument with respect to the trial court's determination that the evidence of record supported the finding that the storage of Property Owners' vehicles on their respective properties constitutes a nuisance in fact.

children going to and from school." *Talley*, 394 A.2d at 646. Property Owners contend that no such conditions exist in this matter. Property Owners argue that the evidence, as stipulated to by the parties, was not sufficient to establish the existence of a nuisance in fact.

Property Owners contend further that this matter is consistent with the conditions described in *Hanzlik*, 400 Pa. 134, 136, 161 A.2d 340, 341, where the defendant's storage of junked automobiles "involve[d] no loud noises, no offensive odors, attract[ed] no vermin and [was] not injurious to the public." Property Owners argue that the trial court abused its discretion by looking beyond the Stipulation to find evidence allegedly establishing the possible existence of a nuisance in fact. Property Owners argue that the Borough presented no evidence to prove that Property Owners': (1) neighbors are inconvenienced, annoyed, or discomforted; (2) vehicles are unattended or affect property values or create an attractive nuisance for children; (3) vehicles have begun to harbor pests or vermin; or (4) vehicles have begun to leach dangerous chemicals into the ground and surrounding water table.

■ It is well settled that there must be sufficient evidence of a nuisance in fact before permitting a borough to enforce an ordinance abating the storage of vehicles on private property. *Davis*, 561 A.2d at 1341. The evidence in this matter consists solely of the parties' Stipulation.[10] Therein, the parties stipulated to the following facts.

Property Owners' own certain properties within the limits of the Borough. (Stipulation ¶¶ 2–75, R.R. at 32a–40a.) "Certified inspection mechanics have found that [Property Owners'] vehicles are not leaking any substances or otherwise creating an environmental hazard." (Stipulation ¶ 87, R.R. at 42a.)

The property owned by R.I. Hench and Carol D. Hench (Henchs) at 27 Barnett Street is bordered on two sides by residential homes and on a third side by a public roadway. (Stipulation ¶¶ 3, 6, 10–14, R.R. at 32a–33a.) "The grounds of the Barnett Street property are well maintained and neatly mowed."[11] (Stipulation ¶ 15, R.R. at 33a.) "The Barnett Street property was inspected on December[ ] 15[,] 2008 by a licensed exterminator and no vermin or other noxious pests were found." (Stipulation ¶ 16, R.R. at 34a.) The Henchs have stored several unregistered, uninspected, and untitled motor vehicles and permitted others to store motor vehicles on the Barnett Street property for more than forty-eight hours continuously since the date of purchase in 1962.[12] (Stipulation ¶¶ 8, 17, R.R. at 33a–34a.)

**10.** *See Kershner v. Prudential Insurance Company*, 382 Pa.Super. 95, 554 A.2d 964, 966 (1989) (stating that "[P]arties may bind themselves by stipulation on matters relating to individual rights and obligations, as long as their stipulations do not affect the court's jurisdiction or due order of business . . . stipulations are binding upon the court as well as on the parties agreeing to them."); *Park v. Greater Delaware Valley Savings & Loan Association*, 362 Pa.Super. 54, 523 A.2d 771, 773 (1987) (holding that "stipulated facts are binding upon the court as well as the parties.").

**11.** R.A. Hench is the son of R.I. Hench and Carol D. Hench, and he maintains a dental practice at the Barnett Street property. (Stipulation ¶¶ 5, 9, R.R. at 33a.)

**12.** As of the date of the Stipulation, the Henchs were storing five unregistered, uninspected, or untitled vehicles on the Barnett Street property. (Stipulation ¶¶ 19–20, 22–24, R.R. at 33a–35a.)

R.I. Hench's "Chicken House property"[13] is situated next to and south of the Barnett Street property and is visible from State Route 34, as well as a local bank. (Stipulation ¶¶ 25, 30, R.R. at 35a.) "The grounds of the Chicken House property are well maintained and neatly mowed" and were "inspected on or about December 15, 2008 by a licensed exterminator and no vermin or other noxious pests were found." (Stipulation ¶¶ 31–32, R.R. at 35a.) R.I. Hench has stored several unregistered, uninspected, or untitled motor vehicles and permitted others to store unregistered, uninspected, or untitled motor vehicles for more than forty-eight hours on the Chicken House property continuously since the date of purchase in 1978.[14] (Stipulation ¶¶ 28, 33, R.R. at 35a.)

A cemetery and a residential home border R.A. Hench's Church Street Property, which he purchased in 1998, and an open field is situated thereon. (Stipulation ¶ 46, R.R. at 37a.) "The grounds of the Church Street property are well maintained and neatly mowed" and were "inspected on or about December[ ] 15[,] 2008 by a licensed exterminator and no vermin or other noxious pests were found." (Stipulation ¶¶ 47–48, R.R. at 37a.) R.A. Hench also has stored several unregistered, uninspected, or untitled vehicles on his Church Street Property for more than forty-eight hours.[15] (Stipulation ¶ 51, R.R. at 38a.)

S. Durbin Wagner owns property on Main Street in the Borough from which he operates a landscaping and mowing business. (Stipulation ¶¶ 64–65, R.R. at 39a.) "The Main Street property is an open field surrounded by [residential homes]" and is "well maintained and neatly mowed." (Stipulation ¶¶ 67–68, R.R. at 40a.) "The Main Street Property was inspected on December 15, 2008 by a licensed exterminator and no vermin or other noxious pests were found." (Stipulation ¶ 69, R.R. at 40a.) S. Durbin Wagner has stored approximately fifteen vehicles on the Main Street property for more than forty-eight hours.[16] (Stipulation ¶ 70, R.R. at 40a.)

Based on the foregoing, the trial court determined that:

The facts indicate that the properties are bordered by residential homes, and a business[ ] and that on the properties in question sit a variety of vehicles which are unlicensed and/or uninspected. The unattended vehicles are not stored in a garage, covered or in an area intended for the storage of motor vehicles. These vehicles sit, year after year, in the plain view of all of the adjacent homeowners and property owners. The ordinance seeks to create a nuisance where the facts indicate the unreasonable or unwarrantable use of private property which causes inconvenience, annoyance, or discomfort to others in their legitimate enjoyment of their per-

---

13. This property was originally used to raise chicken hatchlings in a two-story building. (Stipulation ¶ 27, R.R. at 35a.)

14. As of the date of the Stipulation, R.I. Hench was storing five unregistered, uninspected, or untitled vehicles on the Chicken House property and was permitting the storage of two unregistered, uninspected, or untitled vehicles that are owned by other parties. (Stipulation ¶¶ 35–39, 42–43, R.R. at 36a–37a.)

15. As of the date of the Stipulation, R.A. Hench was storing eight unregistered, uninspected, or untitled vehicles on the Church Street property. (Stipulation ¶¶ 53–56, 58–59, 61, 63, R.R. at 38a–39a.)

16. The Stipulation only sets forth a specific description of five unregistered and uninspected vehicles that were being stored on S. Durbin Wagner's Main Street property as of the date of the Stipulation. (Stipulation ¶¶ 71–75, R.R. at 40a.)

sonal or property rights. The facts here have established that these cars sit in plain view of multiple residences within the Borough[,] which can create an inconvenience, annoyance, or discomfort to the adjacent homeowners. These unattended vehicles may affect property values or create an attractive nuisance for children.

(Trial Ct. Op. at 5–6.) The trial court further determined that the parties' stipulation that a December 15, 2008 inspection of the properties by a licensed exterminator found no vermin or pests was too far removed from the July 2010 filing of the Stipulation to support a finding that the vehicles have not begun to harbor pests or vermin almost three and a half years later. (Trial Ct. Op. at 6.) The trial court also rejected the parties' stipulation that certified inspection mechanics found no substances leaking from the vehicles and no environmental hazards because no dates for the inspection were given. (Trial Ct. Op. at 6.) Therefore, the trial court concluded that, there is no way to determine "how much time has passed since the [vehicles] were found [not to be] leaking any substances [or creating any] environmental hazard or if this information is still accurate." (Trial Ct. Op. at 6.)

■ Upon review, we conclude that the trial court erred by finding, based solely on the parties' Stipulation, that the evidence in the record established that Property Owners' abandoned vehicles constitute a nuisance in fact. There was neither a stipulation by the parties that the storage of Property Owners' abandoned vehicles creates an inconvenience, annoyance, or discomfort to the adjacent homeowners, nor was there any evidence in the record to support that Property Owners' unattended vehicles affect property values or create an attractive nuisance for children. The mere fact that Property Owners' vehi-

cles sit in plain view of multiple residences does not support a finding that the vehicles create an inconvenience, annoyance, or discomfort to the adjacent homeowners. The parties specifically stipulated that Property Owners' properties were well maintained and neatly mowed. (Stipulation ¶¶ 15, 31, 48, 68, R.R. at 33a, 35a, 37a, 40a.) Moreover, the burden was on the Borough to prove that Property Owners' vehicles were a nuisance at the time of the July 2010 filing of the parties' Stipulation given that the December 15, 2008 inspections revealed no infestation of pests and vermin or that the vehicles were leaking hazardous substances as of July 2010.

We agree with Property Owners that the facts in this matter are similar to this Court's decision in *Teal* and our Supreme Court's decision in *Hanzlik*. In *Teal*, the township ordinance declared it unlawful for the "owner of any motor vehicle to allow, or for any person to park a disabled motor vehicle or permit a disabled motor vehicle to stand, whether attended or unattended, upon any private property within the Township ... for a period of more than seventy-two (72) consecutive hours." *Teal*, 578 A.2d at 81. The defendant kept two vehicles in his driveway, neither of which had current registration or inspection stickers, and the township charged him with violating the local ordinance. *Id.* Pointing to the lack of evidence, this Court reversed the defendant's conviction holding that, at trial, the township "produced evidence that Teal's vehicles were lacking current registration plates and inspection stickers only[ ]; [t]here was no evidence that established or even inferred that the vehicles posed any public danger, inconvenience or distraction." *Id.* at 83. In *Hanzlik*, the Supreme Court stated that there was no evidence to support a finding that the defendant's business constituted a nuisance in fact. *Hanzlik*, 400 Pa. at 136, 139, 161 A.2d at 341, 343. Specifically,

there was no evidence of loud noises, offensive odors, and the attraction of vermin or injuries to the public. *Id.* at 136, 161 A.2d at 341.

As argued by Property Owners, the facts in this matter are unlike those in *Talley*, wherein we held "that the *[a]ctual condition* of Defendant's property was of such a nature as to give rise to a conclusion that the storage of wrecked, junked, and or abandoned vehicles thereon constituted a public hazard and, thereby, a nuisance in fact within the meaning of the [borough's] ordinance." *Talley*, 394 A.2d at 646 (emphasis added). The record in *Talley* established that the condition of the defendant's property included:

> numerous wrecked, junked, and abandoned vehicles ...; that auto parts and related debris [—] fenders and bumpers with jagged edges, transmissions, wheels, tires, broken glass [—] were strewn about the property; and that many of the vehicles closely abutted and partially impinged upon a public sidewalk frequently used by children going to and from school.

*Id.* In the present case, there is no evidence that the condition of the properties mirror that of the defendant's property in *Talley*. Therefore, we conclude that the trial court erred by finding that the storage of the abandoned vehicles on Property Owners' properties constitutes a nuisance in fact.

Accordingly, the trial court's December 27, 2010 Order granting the Borough's Motion for Summary Judgment is reversed. Based on our holdings in this matter, it is clear that the Property Owners are entitled to summary judgment. As such, this matter is remanded to the trial court for the entry of an order granting Property Owners' Motion for Summary Judgment.[17]

### *ORDER*

NOW, January 18, 2012, the Order of the Court of Common Pleas of the 41st Judicial District (Perry County Branch) (trial court) in the above-captioned matter is hereby **REVERSED** and this matter is **REMANDED** to the trial court for the entry of an order granting the "Motion of S. Durbin & Yolanda G. Wagner; Robert A. Hench; Robert I. & Carol D. Hench, Defendants, for Summary Judgment."

Jurisdiction relinquished.

---

**17.** As stated previously herein, the trial court did not rule on Property Owners' Motion for Summary Judgment. Property Owners specifically aver in their Motion for Summary Judgment requesting a declaratory judgment that: (1) Ordinance No. 256 "is ultra vires because [it] declares the storage of abandoned ... vehicles ... as a nuisance per se"; and (2) "[t]he vehicles stored by [Property Owners] are not nuisances *in fact,* and the Borough has not and cannot prove that the vehicles stored by [Property Owners] are nuisances *in fact."* (Property Owners' Motion for Summary Judgment at 2, R.R. at 45a (emphasis in original).)